## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2016, 9:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re T.D.H., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | April 6, 2016 <br><br> Court of Appeals Case No. 20A03-1509-JV-1467 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Terry C. Shewmaker, Judge <br><br> The Honorable Deborah A. Domine, Magistrate <br><br> Trial Court Cause No. 20C01-1504-JD-138 |

**Crone, Judge.**

# Case Summary

T.D.H. was adjudicated a delinquent for committing an act that would be class C felony child molesting if committed by an adult. The juvenile court ordered wardship of T.D.H. to be with the Indiana Department of Correction ("DOC"). T.D.H. now appeals. The sole issue presented for our review is whether the juvenile court abused its discretion in placing T.D.H. in the DOC. Finding no abuse of discretion, we affirm.

# Facts and Procedural History

In April 2015, the State alleged T.D.H. to be a delinquent child for committing an act that would be class B felony child molesting if committed by an adult. Five-year-old N.C. disclosed to her mother that sixteen-year-old T.D.H. "touched her with his penis all over her body and then put it inside of her." Appellant's App. at 10. According to N.C., T.D.H. hurt the "private" part of her body, the part covered by underclothes. Tr. at 177. T.D.H. touched N.C.'s private part "a lot of times" and he put his mouth on her private area at least once. *Id*. at 178. N.C. told her mother that T.D.H. had "sex" with her two times. *Id*. at 190. She explained that "sex is when a guy gets on top of a girl and says that it's okay." *Id*. at 191. N.C. said that T.D.H. "was pushing on her stomach really hard to where she couldn't yell for help, or she couldn't cry, she couldn't do anything." *Id*. N.C. told a forensic examiner that T.D.H.'s penis touched her "skin" and went "inside [her] body." Appellant's App. at 10.

[3] After filing the delinquency petition, the State filed a waiver of juvenile court jurisdiction alleging that T.D.H. had three prior referrals and two prior adjudications for committing acts that would constitute class B and class C felony child molesting if committed by an adult. The waiver also alleged that T.D.H. had "been offered numerous services through the Juvenile Justice System which he has failed to take advantage of" thereby demonstrating that "he is beyond rehabilitation in the Juvenile Justice System." *Id.* at 36-37. The prior services offered to T.D.H. included a psychosexual assessment, no contact orders, placement in the juvenile detention center, probation supervision, residential treatment, sex offender treatment, in-home family therapy, individual and group therapy, and implementation of a protection plan. Following a hearing, the juvenile court denied the waiver. A fact finding hearing on the delinquency petition was held on July 13, 2015. At its conclusion, the juvenile court entered a true finding that T.D.H. committed an act that would be class C felony child molesting if committed by an adult.

[4] The juvenile court began a dispositional hearing on July 14, 2015. During that hearing, the probation department representative recommended that the juvenile court award wardship of T.D.H. to the DOC. The representative explained that placement in the DOC was in T.D.H.'s best interest because he presented a risk to himself and the community, and he could continue to receive sexual maladaptive treatment in the DOC. The State agreed with the probation department's recommendation but requested that an updated psychosexual assessment of T.D.H. be performed. Counsel for T.D.H. had no

objection to obtaining an updated assessment, but argued that T.D.H. should be placed in a residential facility rather than the DOC. The trial court ordered that T.D.H. receive an updated psychosexual assessment and continued the dispositional hearing until the assessment could be completed.

[5] The juvenile court convened again for a dispositional hearing on August 25, 2015. A representative from the probation department reported that the results of the psychosexual assessment indicated that T.D.H. was "at high risk for historical sexual assaults and failure to respond to consequences and interventions." Tr. at 276. The assessment further revealed that T.D.H. was "risk-prohibitive for community-based placement." Appellant's App. at 62. T.D.H. testified at the disposition hearing and denied that he ever molested N.C. He testified that he was lying during the psychosexual assessment when he admitted to molesting N.C. T.D.H.'s parents also spoke. They each implied that they did not believe that T.D.H. molested N.C.

[6] At the conclusion of the hearing, the court stated:

> I think DOC is a good recommendation based upon all of those individuals who are saying that that's necessary now and based on the fact that all I'm hearing, and all I've ever heard from parents are excuses. I think [T.D.H.] needs to get away from those excuses and seriously be enmeshed in treatment and get it right this time around, because dad says, he wants his son to be successful in life, and we all do. And reoffending again after treatment is not successful. Never reoffending again is the objective and the goal we all have and DOC is not giving up on him, DOC is simply a more intense level of treatment within the juvenile justice system, which he is staying in because the waiver

was denied, but that does not negate the fact he needs significant treatment and DOC will provide that. I'm making him a ward of DOC.

Tr. at 309-10. The court then entered a detailed written dispositional order awarding wardship of T.D.H. to the DOC for placement in a correctional facility for children. This appeal ensued.

## Discussion and Decision

[7] The juvenile court is given "wide latitude and great flexibility" in determining the specific disposition for a child adjudicated a delinquent. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct. App. 2012). The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy favoring the least harsh disposition. *See* Ind. Code § 31-37-18-6.[1] A disposition will not be reversed absent a showing of an abuse of discretion, which occurs when the juvenile court's order is clearly against the

---

[1] This section provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6.

logic and effect of the facts and circumstances before the court or the reasonable inferences that can be drawn therefrom. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[8] T.D.H. asserts that the juvenile court abused its discretion in ordering him placed in the DOC because a less restrictive option, namely residential treatment, was available. However, we remind T.D.H. that placement in the least restrictive setting is required only "[i]f consistent with the safety of the community and the best interest of the child." Ind. Code § 31-37-18-6. Indeed, this Court has repeatedly "recognized that 'in certain situations the best interest of the child is served by a more restrictive placement.'" *R.H.*, 937 N.E.2d at 391

[9] Here, T.D.H.'s placement in the DOC is justified by the heinous nature of the facts underlying his current adjudication as well as his demonstrated pattern of criminal and violent sexual conduct. Significantly, T.D.H.'s prior delinquency history is also for child molesting. One offense involved him forcefully sodomizing his eleven-year-old cousin, while the other offense involved him molesting his seven-year-old sister and threatening her with violence if she told anyone. Clearly the prior residential treatment he received following those offenses neither served to rehabilitate him nor to deter him from committing the same offense against five-year-old N.C. T.D.H.'s assertion on appeal that the results of the psychosexual assessment were "subjective," that he was "amenable to treatment," and that there were "other options available locally," are simply requests for us to reweigh the evidence which we may not do.

Appellant's Br. at 21.  The juvenile court did not abuse its discretion when it placed T.D.H. in the DOC.  The juvenile court's order is affirmed.

[10]    Affirmed.

Najam, J., and Robb, J., concur.