## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 26 2019, 7:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.C., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 26, 2019 <br><br> Court of Appeals Case No. 19A-JV-1410 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Geoffrey A. Gaither, Magistrate <br><br> Trial Court Cause No. 49D09-1904-JD-387 |

**May, Judge.**

[1] K.C. appeals the juvenile court's decision to place him in the Department of Correction ("DOC"). K.C. claims the court abused its discretion by placing him in a more restrictive environment when K.C. has a low intellect and less-restrictive alternative placements were available. We affirm.

## Facts and Procedural History

[2] On April 8, 2019, in Indianapolis, K.C. was riding in a car that was pulled over for a traffic violation. When the car stopped, K.C. and another juvenile passenger exited the car and ran from the police. K.C. was temporarily able to evade the police but a canine unit found him hiding between two of a semi-truck's tires. While searching K.C., police found a .380 caliber bullet. Police later recovered a handgun capable of firing .380 caliber bullets in the area of the traffic stop from which K.C. had fled.

[3] The State alleged K.C. was a delinquent for committing dangerous possession of a firearm. K.C. admitted possessing the firearm and left the disposition up to the juvenile court. The juvenile court found K.C. to be a delinquent child and committed him to the DOC for six months.

## Discussion and Decision

[4] We initially note that "the purpose of the juvenile process is vastly different from the criminal justice system." *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). The goal of juvenile proceedings is "*rehabilitation* so that the youth will not become a criminal as an adult." *Id.* (emphasis in original). To

facilitate this goal, juvenile courts have a number of options available for juvenile placement: "from a private home in the community, a licensed foster home, a local juvenile detention center, to State institutions[.]" *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987).

[5]    To assist juvenile courts in selecting amongst available placement alternatives, the Indiana Legislature has provided guidance regarding the option to be selected for any particular child:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

Ind. Code § 31-37-18-6. Within those parameters, a juvenile court has discretion in choosing the disposition appropriate for each juvenile delinquent, *D.E. v. State*, 962 N.E.2d 94, 96 (Ind. Ct. App. 2011), and we review its disposition for an abuse of that discretion. *Id.* at 97. An abuse of discretion occurs if the court's decision is "clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[6] K.C. argues the juvenile court abused its discretion by ordering him to serve time in the DOC rather than in a less-restrictive placement. However, K.C., at only fifteen years old, has an extensive juvenile record, including true findings for acts that would be Class A misdemeanor resisting law enforcement, Class A misdemeanor theft, Level 6 felony escape, and Level 5 felony burglary. The court has placed K.C. in numerous alternative services and less restrictive placements that were intended to help him, including "family-centered treatment, home based therapy, supervised release, electronic monitoring, a mentoring program, emergency shelter care, psychological evaluations, residential placement at Wernle Youth and Family Treatment Center, intercept, evening reporting, day reporting, Project Life, home confinement, and substance abuse evaluation and treatment." (App. Vol. II at 84) (formatting altered). Despite receiving all these services, K.C. continues to commit delinquent acts.

[7] While the goal of the juvenile system is to rehabilitate youth, K.C. has continued to commit delinquent acts despite receiving numerous services and

being placed in less-restrictive programs. Therefore, we cannot say the juvenile court abused its discretion by placing K.C. in the DOC. *See*, *e.g.*, *D.E.*, 962 N.E.2d at 97 (no abuse of discretion in placement of juvenile at DOC after less-restrictive dispositions had been unsuccessful).

# Conclusion

[8] Because K.C. has had multiple opportunities to take advantage of less restrictive placements, but he has continued to display delinquent behavior, the juvenile court did not abuse its discretion by placing him in the DOC following his most recent adjudication. Accordingly, we affirm.

[9] Affirmed.

Crone, J., and Pyle, J., concur.